IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-MC-20707-JEM/BECERRA

*In re:* Supplemental Application Pursuant to
28 U.S.C.§ 1782 of

FARHAD AZIMA,

      *Petitioner,*

v.

AMIT FORLIT,

      *Respondent.*

_____/

## REPLY IN SUPPORT OF THE SUPPLEMENTAL APPLICATION

### INTRODUCTION

Petitioner files this reply in support of his Supplemental Application [D.E.s 23 and 24], seeking discovery from Respondent Amit FORLIT in his personal capacity; and in response to FORLIT's opposition (or "answer") thereto [D.E. 31]. Contrary to FORLIT's assertions, he is "found" in this District for two reasons: (1) he has substantial connections to the jurisdiction; and (2) due process is not jeopardized by seeking discovery of him here.  Moreover, FORLIT does not deny that he is, by all facts, the "alter ego" of two Florida LLCs – Insight Analysis and Research LLC ("Insight") and SDC-Gadot LLC ("Gadot") – thereby subjecting him, personally, to the same jurisdiction as those entities.

FORLIT seems to argue that a dearth of case law on this nuanced fact pattern should cause the Court to turn away from the equities at play.  Indeed, much of his response focuses on his claim that he is "not a hacker" – which is a factual question for the underlying U.K. case, not a legal question of jurisdiction pending before this Court.  It is telling, though, that FORLIT does not contest the core merits of Petitioner's claims – that is, that his ties to the District are significant

1

and created from his own actions. Thus, FORLIT's response [D.E. 31] does not refute Petitioner's submission that he has substantial, proven ties to the District and, accordingly, should submit to discovery here under Section 1782.

## ARGUMENTS

I. **FORLIT is "found" in the jurisdiction, under Florida's long-arm statute.**

Contrary to FORLIT's position, courts have persuasively held that "the statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019). There, the Second Circuit recognized "Congress's intent that § 1782 be 'interpreted broadly,' especially given the district court's ability 'to exercise discretion in deciding whether, and in what manner, to order discovery in particular cases," and considered that, "Courts have consistently given broad interpretations to similar "found" language in other statutes." *Id*. at 528.

Moreover, while FORLIT argues that Florida's long-arm statute is too attenuated to measure whether jurisdiction is proper here, Petitioner submits that the long-arm statute is designed to determine exactly if a non-Florida resident, as FORLIT claims to be, can be brought to the State. Both considerations – substantial contacts and due process – are designed not only to ensure that a defendant's constitutional rights are preserved, but also to abide by fairness and equity. *See, e.g., Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d, 1231, 1237 (S.D. Fla. 2015) (internal citations omitted); *XL Vision, LLC v. Holloway*, 856 So. 2d 1063 (Fla. 5th DCA 2003); *ripKurrent, LLC v. Ballard IRA, LLC*, 530 F. Supp. 3d 1281 (S.D. Fla. 2021); *Iconic Content, LLC v. Unknown Officer*, 522 F.Supp.3d 1179 (M.D. Fla. 2020); *Waite v. All Acquisition Corp.*, 901 F.3d 1307 (11th Cir. 2018).

Indeed, the Eleventh Circuit has held that, "a federal court may properly exercise personal

jurisdiction over a non-resident defendant only if two requirements are satisfied: (1) the state long-arm statute, and (2) the Due Process Clause." *Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1134-35 (S.D. Fla. 2007) (internal citations omitted). As stated in our Supplemental Application, FORLIT has substantial and consistent contacts with the District in ways that directly relate to the underlying and pending case in the United Kingdom.

For example, FORLIT formed Insight and Gadot in Florida and was directly paid millions of U.S. dollars through those entities for his hacking work, which is at the center of the U.K. Proceeding. Rule 902(11) certified bank records confirm that the entities conducted extensive business activities and engaged in significant transactions with other Florida companies. Moreover, both entities are still active and operational, and FORLIT serves as the managing member who signs the annual reports.[1] FORLIT does not dispute that he is the person executing such transactions in Florida, by and through the companies. It appears FORLIT also travels to the District more than he proffers because Gadot's bank records show debit card purchases in Miami as recently as April 2020.

## II. FORLIT is the "alter ego" of Insight and Gadot and should be subject to the same jurisdiction as the entities.

These facts also support Petitioner's argument that FORLIT is the "alter ego" of Insight and Gadot. FORLIT does not substantively address this point in his response. As cited in the memorandum in support of the Supplemental Application, there is ample case law precedent establishing that the "corporate veil," which FORLIT is hiding behind, can and should be "pierced" if the corporations only exist as a "puppet" for a person. *See, e.g., East Okeechobee Palms, LLC v. Kellam*, 2015 WL 12977392, at *4 (S.D. Fla. 2015); *Dania Jai-Alai Palace, Inc. v. Sykes*, 450

---

[1] In his response, FORLIT does not dispute that he is GURLAVIE, the listed managing member of Insight.

So. 2d 1114, 1117 (Fla. 1984); *Stonepeak Partners, LP v. Tall Tower Capital LLC*, 231 So. 3d 548, 556 (Fla. 2d DCA 2017).

The facts known show that FORLIT is merely using Insight and Gadot as a sword and shield to protect him from discovery – and that the entities themselves do not operate independently of FORLIT's actions. Indeed, FORLIT admitted as such by attesting that the entities do not have a single employee besides him – and do no business on their own. [D.E. 10-1, p. 2.] Yet FORLIT somehow fails to address the millions of dollars in transactions Gadot engages in. Petitioner submits that sufficient facts have been submitted to demonstrate personal jurisdiction under an "alter ego" theory, and that FORLIT's inadequate response does little to refute that finding.

**III.    The *Intel* factors favor granting the discovery requested.**

FORLIT also argues that the factors articulated in *Intel* by the Supreme Court do not favor discovery in this case. His arguments seem to be based on a misunderstanding of the posture of the U.K. Proceeding. First, FORLIT is not a party to the U.K. Proceeding, which is the first factor under *Intel*.[2] Second, it is irrelevant whether Petitioner has procured other witness statements in the U.K. Proceeding. Petitioner reasonably seeks discovery from FORLIT for use in the U.K. Proceedings, has a good faith basis to believe such discovery is relevant and useful, and is not doing so to circumvent U.K. law.

Third, the discovery sought is highly relevant to the U.K. Proceeding and is narrowly tailored. The U.K. Proceeding alleges – based in part on the affidavit of Mr. Page – that FORLIT prepared monthly "Project Update" reports about Petitioner and his associates from at least 2015

---

[2] The Holden declaration does not state that Petitioner brought a claim against FORLIT; rather, the declaration states that the U.K. claim was brought against RAKIA and others, and FORLIT worked with the named defendants to commit illicit conduct.

to 2020. Those reports included embedded copies of the actual hacked data, and Mr. Page paid FORLIT millions of dollars for this work. The U.K. Proceeding also alleges a scheme to obstruct justice and lie to the court through, *inter alia*, false statements that Mr. Halabi found Petitioner's stolen data on the publicly available internet. In submitted affidavits to the Court, FORLIT also admits he worked for Mr. Page and provided "links" to Petitioner's stolen data to some of the named defendants. It is clear from FORLIT's affidavits that FORLIT knows a great deal about what occurred with Mr. Page and how Petitioner's data came to be on the internet. As such, the discovery sought is highly relevant and narrowly tailored to the U.K. Proceeding. *See* D.E. 23, Ex. M (draft subpoena).[3]

Last, though much of FORLIT's response focuses on why he is "innocent" of hacking, Petitioner submits that such false denials are irrelevant to the Court's analysis. Accordingly, Petitioner will not respond to FORLIT's self-serving statements, which are belied by the evidence gathered thus far in this case, as described in previous filings.

Respectfully submitted,

Dated: June 21, 2022

s/ *Vanessa Singh Johannes*
Vanessa Singh Johannes (FBN 1028744)
CARLTON FIELDS P.A.
700 N.W. 1st Avenue, Miami, Florida 33136
(305) 539-7358 | VJohannes@carltonfields.com

s/ *Ian Herbert*
Ian A. Herbert (admitted *pro hac vice*)
MILLER & CHEVALIER CHARTERED
iherbert@milchev.com | 202.626.1496
*Counsel for Petitioner*

---

[3] To the extent the discovery requested extends beyond the work FORLIT did for Mr. Page, specifically to areas about FORLIT's connections to Florida and GURLAVIE, these topics are still relevant to the U.K. Proceeding. FORLIT disputes his connections to Florida despite Gadot bank records showing millions of U.S. dollars of transactions, and as explained in previous filings, it appears that FORLIT has an alias identity – GURLAVIE – with the same address, birth date, and social security number as him. Questions related to these topics are clearly relevant to Petitioner's case and understanding of the role that FORLIT played in the overall hacking scheme.

6

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2022, a true and correct copy of the foregoing document was filed via CM/ECF and served on counsel for Respondent Amit Forlit, Christopher S. Salivar and Elan I. Baret, via such means.

  s/ *Vanessa Singh Johannes*
    Vanessa S. Johannes